Clay R. FIRESTONE, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 32A01–0502–CR–62.

Court of Appeals of Indiana.

Dec. 1, 2005.

James H. Fierek, Brownsburg, for Appellant.

Steve Carter, Attorney General of Indiana, Maureen Ann Bartolo, Deputy Attorney General, Indianapolis, for Appellee.

**OPINION**

RILEY, Judge.

### STATEMENT OF THE CASE

Appellant–Defendant, Clay R. Firestone (Firestone), appeals his convictions for rape as a Class B felony, Ind.Code § 35–42–4–1, and criminal deviate conduct as a Class B felony, I.C. § 35–42–4–2.

We affirm.

### ISSUES

Firestone raises four issues on appeal, which we restate as:

(1) Whether his convictions for rape and criminal deviate conduct violate the continuing crime doctrine;

(2) Whether the State presented sufficient evidence to sustain his habitual offender adjudication;

(3) Whether the State presented sufficient evidence to support the jury's aggravated finding that he committed the offenses in the presence or within hearing of S.W.'s minor children; and

(4) Whether the trial court erred in denying his Motion for Mistrial.

### FACTS AND PROCEDURAL HISTORY

On an evening in December of 2003, S.W. and Bradley Griffin (Griffin) met for the first time at the Eight Seconds Saloon in Indianapolis, Indiana. Before the two parted ways for the evening, S.W. gave Griffin her phone number. On January 6, 2004, Griffin called S.W. and asked if he and his cousin, Firestone, could come over to S.W.'s home, to which S.W. agreed. Upon arrival at S.W.'s house, Griffin, Firestone, and S.W. drank whiskey and played cards in the kitchen. Throughout the evening, S.W. would occasionally check on her two youngest children, ages two and three, who were watching a movie in their bedroom down the hall from the kitchen.[1] Later in the evening, after S.W. checked on the kids, she stopped in her bedroom on the way back to the kitchen. Griffin entered her bedroom and playfully threw S.W. on the bed. S.W. told Griffin that she did not want to have sex because Firestone was waiting for them in the kitchen. As S.W. attempted to rise, Griffin pinned her down by placing his knees on her shoulders. Griffin then pulled off S.W.'s pants and underwear, placed his hands around her neck, and shoved his penis inside her mouth. Shortly thereafter, Firestone entered the bedroom and forced his penis inside S.W.'s vagina. S.W. tried to fight the men off of her, but she was too weak. Griffin and Firestone then switched places. Firestone climbed on top of S.W., pinned her down and forced his penis inside her mouth. Once S.W. indicated that she was going to throw up, she was able to break free and began vomiting in the bathroom. Both men then left S.W.'s residence taking with them her children's Playstation video game system. The next day S.W. sought medical attention at Wishard Hospital Emergency Center and filed a police report.

On February 3, 2004, the State filed an information, charging Firestone with Count I, rape, as a Class B felony, I.C. § 35–42–4–1; and Count II, theft, as a Class D felony, I.C. § 35–43–4–2(a). On April 28, and June 23, 2004, respectively, the State amended Firestone's charging information to include Count III, criminal deviate conduct, as a Class B felony, I.C. § 35–42–4–2; and Count IV, habitual offender, I.C. § 35–50–2–8. Additionally,

---

1.  S.W.'s third child was spending the night at his grandmother's house.

the State filed a Notice of Aggravators, notifying their intent to prove at trial the following statutory aggravating circumstances: (1) Firestone has a history of criminal or delinquent activity, I.C. § 35–38–1–7.1(b)(2) (West's 2004); and (2) Firestone committed the offense in the presence or within hearing of a person who is less than eighteen (18) years of age who was not the victim of the offense, I.C. § 35–38–1–7.1(b)(14) (West's 2004).[2]

On November 30 through December 2, 2004, a jury trial was held. At the close of the evidence the jury found Firestone guilty of Count I, rape, and Count III, criminal deviate conduct. The jury found Firestone not guilty of Count II, theft. Following the reading of the jury verdicts, Firestone demanded to be removed from the courtroom and stood up. When the trial judge ordered Firestone to sit down, he refused and began shouting profanities at the jury and the judge. Sheriff's Deputies eventually had to force Firestone to the ground and remove him from the courtroom in restraints.

On the same day, following Firestone's outbursts, the trial court held the second and third phases of Firestone's trial. During the second phase, the jury heard evidence on Firestone's habitual offender charge. At the conclusion of the evidence, the jury found Firestone to be an habitual offender. During the third phase, the State argued to the jury the aggravating circumstance that Firestone committed the offenses in the presence or within the hearing of a person under eighteen years of age. After deliberating, the jury found that the State proved beyond a reasonable doubt that Firestone committed the instant offenses in the presence or within the

hearing of a person less than eighteen years of age.

On January 14, 2005, the trial court held a sentencing hearing. Following the hearing, the trial court sentenced Firestone to eighteen years on Count I, eighteen years on Count III, and twenty-eight years for his adjudication as an habitual offender on Count IV, for a total aggregate sentence of sixty-four years. The trial court also ordered that all counts run consecutively.

Firestone now appeals. Additional facts will be provided as necessary.

### DISCUSSION AND DECISION

#### I. Continuing Crime Doctrine

Firestone first contends that his convictions for rape and criminal deviate conduct violate the continuing crime doctrine. Specifically, Firestone argues that since his actions were continuous, they constituted a single transaction and thus he should only have been convicted of criminal deviate conduct. We disagree.

The continuing crime doctrine essentially provides that actions that are sufficient in themselves to constitute separate criminal offenses may be so compressed in terms of time, place, singleness of purpose, and continuity of action as to constitute a single transaction. *Riehle v. State*, 823 N.E.2d 287, 296 (Ind.Ct.App. 2005), *trans. denied.* Although Firestone cites double jeopardy as the standard of review, we note that the continuous crime doctrine does not seek to reconcile the double jeopardy implications of two distinct chargeable crimes; rather, the doctrine defines those instances where a defendant's conduct amounts only to a single chargeable crime. *Id.* In doing so, the continuous crime doctrine prevents the

---

**2.** Effective May 11, 2005, I.C. §§ 35–38–1–7.1(b)(2) and 35–38–1–7.1(b)(14) are now, respectively, codified as I.C. §§ 35–38–1–7.1 version b(a)(2) and 35–38–1–7.1 version b(a)(4).

State from charging a defendant twice for the same continuous offense. *Id.*

As noted above, Firestone was convicted of rape and criminal deviate conduct. To convict Firestone of rape, the State was required to prove beyond a reasonable doubt that Firestone knowingly or intentionally had sexual intercourse with a member of the opposite sex when the other person is compelled by force or imminent threat of force. *See* I.C. § 35–42–4–1. To convict Firestone of criminal deviate conduct, the State was required to prove beyond a reasonable doubt that Firestone knowingly or intentionally caused another person to perform or submit to deviate sexual conduct when the other person is compelled by force or imminent threat of force. *See* I.C. § 35–42–4–2.

Our review of the record reveals that Firestone knowingly had sexual intercourse with S.W. while Griffin was holding her down. Further the record shows that after Firestone raped S.W., he climbed on top of her, held her down, and made her perform oral sex on him. Based on these facts, Firestone argues that because both offenses occurred in a relatively short period of time and in the same bedroom, his continuous actions should prevent him from being convicted of two crimes. However, the purpose of the continuing crime doctrine is to prevent the State from charging a defendant twice for the same continuous offense. *See Riehle,* 823 N.E.2d at 296.

Here, Firestone clearly committed two different offenses at different times. After he finished raping S.W., he took the time to switch places with Griffin by climbing on top of S.W. and shoving his penis in her mouth. The continuity of the actions does not negate the fact that they were completely different sexual acts committed at different times. It would be impossible for Firestone to have his penis inside S.W.'s vagina and in her mouth at the same time. Thus, because the rape was separate in time from the criminal deviate conduct, we cannot conclude that Firestone's actions fall within the continuing crime doctrine. *See id.*

## II. *Habitual Offender*

Next, Firestone asserts that the State failed to present sufficient evidence to support his adjudication as an habitual offender. Specifically, Firestone argues that the State's evidence is insufficient to prove that he was convicted of felony battery.

Our standard of review for a sufficiency of the evidence claim is well settled. In reviewing sufficiency of the evidence claims, we will not reweigh the evidence or assess the credibility of the witnesses. *Cox v. State,* 774 N.E.2d 1025, 1028–29 (Ind.Ct.App.2002). We will consider only the evidence most favorable to the judgment, together with all reasonable and logical inferences to be drawn therefrom. *Alspach v. State,* 755 N.E.2d 209, 210 (Ind. Ct.App.2001), *trans. denied.* The conviction will be affirmed if there is substantial evidence of probative value to support the conviction of the trier of fact. *Cox,* 774 N.E.2d at 1028–29.

To establish that the defendant is an habitual offender, the State must prove beyond a reasonable doubt that the defendant has been previously convicted of two separate and unrelated felonies.[3] I.C. § 35–50–2–8 (West's 2004). To be "unrelated," the commission of the second felony

---

**3.** To support Firestone's habitual offender charge, the State relied upon his conviction for battery as a Class D felony in 1992, and his conviction for escape as a Class C felony in 1997. Because Firestone does not contest his escape conviction we will only review whether the State presented sufficient evidence of his felony conviction for battery.

must be subsequent to the sentencing for the first, and the sentencing for the second felony must have preceded the commission of the current felony for which the enhanced sentence is being sought. *Flint v. State*, 750 N.E.2d 340, 341 (Ind.2001). Failure to prove the proper sequencing requires that the habitual offender determination be vacated. *Id.*

In regard to the use of documents to establish the existence of prior convictions our supreme court stated in *Tyson v. State*, 766 N.E.2d 715, 718 (Ind.2002) that:

> Certified copies of judgments or commitments containing a defendant's name or a similar name may be introduced to prove the commission of prior felonies. While there must be supporting evidence to identify the defendant as the person named in the documents, the evidence may be circumstantial. If the evidence yields logical and reasonable inferences from which the finder of fact may determine beyond a reasonable doubt that it was a defendant who was convicted of the prior felony, then a sufficient connection has been shown.

Here, to prove that Firestone was previously convicted of felony battery, the State admitted into evidence Exhibit 26, which included in pertinent part: the certified copy of the judgment of conviction, guilty plea agreement, and charging information. Our review of the documents contained in Exhibit 26 reveal that they all carry a consistent cause number and Firestone's name. Moreover, during Firestone's trial for the instant offenses, Clinton City Police Officer Paul Curry (Officer Curry) identified Firestone as the person he arrested on August 15, 1992, for battery as a Class D felony, and that Officer Curry was the victim of the battery. Accordingly, we find there is sufficient evidence from which a reasonable jury could have found that Firestone was convicted of two separate and unrelated felonies. *See* I.C. § 35–50–2–8 (West's 2004); *Cox,* 774 N.E.2d at 1028–29.

### III. *Aggravated Finding*

■ Firestone contends that the State presented insufficient evidence to support the jury's aggravated finding that he committed the offenses in the presence or within the hearing of S.W.'s minor children. Specifically, Firestone argues that the record is completely devoid of any evidence that S.W.'s children saw or were able to hear the offenses taking place. As noted above, in reviewing sufficiency of the evidence claims, we will not reweigh the evidence or assess the credibility of the witnesses. *Cox,* 774 N.E.2d at 1028–29. We will consider only the evidence most favorable to the judgment, together with all reasonable and logical inferences to be drawn therefrom. *Alspach,* 755 N.E.2d at 210. The conviction will be affirmed if there is substantial evidence of probative value to support the conviction of the trier of fact. *Cox,* 774 N.E.2d at 1028–29.

Recently, our supreme court concluded that *Blakely v. Washington,* 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), applies to Indiana's sentencing scheme and therefore, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Smylie v. State,* 823 N.E.2d 679, 685 (Ind.2005). For *Blakely* purposes, Indiana's "fixed term" is the functional equivalent to the "statutory maximum." *Id.* at 683.

Here, prior to sentencing, the State argued to the jury the statutory aggravating circumstance that Firestone committed these offenses in the presence or within

hearing of S.W.'s two minor children.[4] *See* I.C. § 35–38–1–7.1(b)(14) (West's 2004). Following the close of the evidence, the jury found this circumstance to be aggravating. As such, the trial court could use this fact as an aggravating circumstance during sentencing. *See* I.C. § 35–38–1–7.1(b)(14) (West's 2004). Subsequently, during sentencing the trial court enhanced Firestone's sentence based on his criminal history and the fact that he committed the offenses in the presence or within hearing of S.W.'s minor children. Without reweighing the evidence, we will determine whether there is substantial evidence of probative value that Firestone committed the offenses in the presence or within the hearing of S.W.'s minor children. *See Cox,* 774 N.E.2d at 1028–29.

Our review of the record reveals that at the time Firestone committed the instant offenses, S.W.'s two minor children, ages two and three, were in a bedroom which is in close proximity to S.W.'s bedroom. Contrary to Firestone's position, Indiana Code section 35–38–1–7.1(b)(14) (West's 2004) does not require that a child under eighteen actually see or hear the offense taking place; the statute merely requires that in order to qualify as an aggravating circumstance the offense must be committed "in the presence or within hearing of a person who is less than eighteen (18) years of age who was not the victim of the offense." Because the location of the bedrooms are in such close proximity, we find it entirely reasonable for a jury to conclude that the offenses were committed within the hearing of S.W.'s minor children. Accordingly, we conclude that the State presented substantial evidence of probative value that Firestone committed

the offenses within the hearing of a child under eighteen years of age.

### IV. *Motion for Mistrial*

▮ Last, Firestone argues that the trial court abused its discretion in denying his Motion for Mistrial. Specifically, Firestone contends that the second and third phases of his trial should be vacated and a new jury empanelled because his fit of loud outbursts and refusal to be seated resulted in unfair prejudice to himself in the eyes of the jury.

▮ A mistrial is an extreme remedy that is warranted only when less severe remedies will not satisfactorily correct the error. *Howard v. State,* 816 N.E.2d 948, 962 (Ind.Ct.App.2004), *reh'g denied.* To prevail, a defendant must demonstrate that he was placed in a position of grave peril to which he should not have been subjected. *Id.* The decision to grant or deny a motion for mistrial lies within the discretion of the trial court. *Id.* We will reverse the trial court's determination only when an abuse of discretion can be established. *Id.*

Our review of the record reveals that immediately following the jury verdicts, while the jury was still in the courtroom, the trial court had a discussion with both parties concerning appropriate sentencing dates. During this discussion Firestone demanded to be taken back to jail. When the trial court ordered Firestone to sit down, he refused and began shouting profanities at the jury and the judge. After several unsuccessful orders by the trial court for Firestone to sit down, sheriff's deputies forced him to the floor and restrained him. The trial court then obtained an oral waiver from Firestone that he did not wish to be present during his

---

4. Although the State included in its "Notice of Aggravators" Firestone's criminal history, such an aggravating circumstance does not have to be submitted to a jury and proven beyond a reasonable doubt. (Appellant's App. p. 111); *see Smylie,* 823 N.E.2d at 685.

sentencing hearing, and the sheriff's deputies removed him from the courtroom. Thereafter, with Firestone removed from the courtroom, the habitual offender and aggravated findings phase of the trial began.

Clearly, Firestone may have left an unfavorable impression with the jury after he lashed out. However, our supreme court has held that "A defendant who creates his own cause for mistrial presents no error." *Avant v. State,* 528 N.E.2d 74, 78 (Ind. 1988). Therefore, we conclude that Firestone cannot complain of any prejudice that he himself may have created. To hold otherwise would encourage defendants to disrupt judicial proceedings in order to get a new jury empanelled. Accordingly, the trial court did not abuse its discretion in denying Firestone's Motion for Mistrial.

## CONCLUSION

Based on the foregoing, we conclude that (1) Firestone's convictions do not violate the continuing crime doctrine; (2) the State presented sufficient evidence to sustain Firestone's habitual offender adjudication; (3) the State presented sufficient evidence to support the jury's aggravated finding; and (4) the trial court did not abuse its discretion in denying Firestone's Motion for Mistrial.

Affirmed.

BAKER, J., and MATHIAS, J., concur.